***********
The undersigned have reviewed the prior Opinion and Award of Deputy Commissioner Ledford based upon the record of the proceedings before former Deputy Commissioner Hoag and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. Accordingly, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties before the Deputy Commissioners as:
 STIPULATIONS
1. These actions were filed pursuant to the Tort Claims Act, N.C. Gen. Stat. § 143-291 et seq. The Industrial Commission has jurisdiction to hear these claims.
2. The deposition testimony of L. Andrew Goad, DDS, Margo Burr, M.A., and Antonio Puente, Ph.D. is a part of the evidentiary record, along with additional documents submitted via the stipulation of the parties after the hearing before the Deputy Commissioner.
3. The following Exhibits were identified and submitted via the stipulation of the parties at the time of the hearing before the Deputy Commissioner:
 Plaintiff's Exhibit Nos. 1 through 3 — Photographs of the Accident Scene
 Plaintiff's Exhibit No. 4 — Photograph of the Vehicle (driven by Kimberly Lyda)
Plaintiff's Exhibit Nos. 5 through 10 — Photographs of Autumn
Plaintiff's Exhibit No. 11 and 12 — Photographs of Cassie
Plaintiff's Exhibit No. 13 and 14 — Photographs of Edward Lyda, Jr.
Plaintiff's Exhibit No. 15 — Accident Investigation Report
Plaintiff's Exhibit No. 16 — Custody Order
Plaintiff's Exhibit No. 17 — Autumn's Medical Records
Plaintiff's Exhibit No. 18 — Brittany's Medical Records
Plaintiff's Exhibit No. 19 — Cassie's Medical Records
 Plaintiff's Exhibit No. 20 — Edward Lyda Jr.'s Medical Records
Plaintiff's Exhibit No. 21 — Kimberly's Medical Records
The following additional Plaintiff's Exhibits were stipulated by both parties and mailed to the Commission with a cover letter on April 4, 2000:
 Plaintiff's Exhibit No. 22 — Custody Order for Edward Lyda Jr.
 Plaintiff's Exhibit No. 23 — Marriage License of Edward D. Lyda, Sr. and Kimberly Anne Lively
Plaintiff's Exhibit No. 24 — Birth Certificate of Edward Lyda Jr.
Plaintiff's Exhibit No. 25 — Death Certificate of Kimberly A. Lyda
Plaintiff's Exhibit No. 26 — Birth Certificate of Autumn Marie Lively
Plaintiff's Exhibit No. 27 — Birth Certificate of Brittany Lynn Lively
Plaintiff's Exhibit No. 28 — Birth Certificate of Cassie Annette Lively
Plaintiff's Exhibit No. 29 — Additional Medical Records of Edward Lyda Jr.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. This claim and those consolidated with it were brought pursuant to the Tort Claims Act on behalf of four minor children and one adult, who were injured in an accident, which occurred on January 22, 1997 in Transylvania County. Three of the minors, Brittany Lively, Cassie Lively, and Autumn Lively, were the children of Kimberly Lyda, who is now deceased. Kimberly Lyda was also injured in the accident. The fourth child, Edward Lyda, Jr. is the son of Edward D. Lyda, Sr., who was married to Kimberly Lyda.
2. The father of the three Lively children, Carroll Lively, was killed in a vehicular accident in August 1996. At that time, Carroll was divorced from Kimberly, and the three minor children lived with her. Kimberly was involved in a relationship with Edward Lyda, whom she lived with and then married on December 7, 1996. On January 22, 1997, the three minor Lively children lived with Kimberly and Edward along with his son, Edward, Jr.
3. The accident, which is the subject of these claims, occurred at about 4:10 p.m. on January 22, 1997 in Transylvania County east of the Brevard city limits on N.C. Highway 280 at the intersection with McGuire Road. At that time, a school bus was stopped facing west in the right-hand lane of Hwy. 280 to drop off children, and had extended the flashing stop signs. Kimberly Lyda, now deceased, had stopped her vehicle on McGuire Road facing Highway 280, to pick up her three daughters and her stepson, who were being dropped off the school bus.
4. As the children were departing from the school bus and crossing the road to their mother's car, a vehicle owned by the N.C. Wildlife Resource Commission, and driven by their employee, Ishmel Creson was traveling east on Highway 280. Mr. Creson was driving a large truck pulling a flatbed trailer loaded with a backhoe. At this location, Highway 280 has five lanes, two in either direction and one center turn lane. A vehicle had stopped in the center lane eastbound on Hwy. 280 and a vehicle had stopped in the outside eastbound lane on Hwy. 280, which left only the lane between them open for through traffic. It had been raining and the pavement was wet.
5. As Creson's truck approached, he attempted to change lanes and applied the brakes. The brakes did not operate properly and the truck jackknifed, sliding into the vehicle stopped in the center turn lane, and knocking it forward. The trailer turned onto its side and the backhoe slid into the school bus. Although Brittany Lively was getting off of the bus to cross the street with the other children, she had returned to retrieve a hat for a little boy and was on the bus at the time it was struck causing her to fall and hit her head. The truck continued sliding across the highway and struck and rolled onto Kimberly Lyda's vehicle. As the truck slid, it also struck Autumn Lively and Cassie Lively, as they were crossing the street. Edward Lyda, Jr. was injured as he jumped to get out of the way and landed in a ditch.
6. Sergeant John Dunn of the North Carolina Highway Patrol investigated the accident, along with three other troopers and two DMV officers. One of the investigators, Trooper Grayson, was a specialist in accident reconstruction. The investigators concluded that the brakes on the truck and trailer owned by the Defendant were out of tolerance and the inspection on the trailer had expired.
7. The driver of the truck, Ishmel Creson, an employee and agent of the N.C. Wildlife Resource Commission, was negligent in that he failed to keep a reasonable lookout to observe the vehicles stopped in the highway ahead of him in sufficient time to slow or stop his vehicle to avoid a collision. He failed to keep this truck under proper control and operate it in a safe manner, as to avoid the collision. He operated the truck and trailer at a speed that was greater than was reasonable considering the rainy conditions and the fact that the brakes were not in proper working order.
8. The N.C. Wildlife Resource Commission had a duty to keep the truck and trailer properly maintained and knew or should have known that the brakes were defective and should have taken steps to repair the same prior to the operation of the vehicle on January 22, 1997.
9. On the date of the accident, Brittany Lively was ten years old, having a birth date of July 24, 1986. She was on the bus when it was struck by defendant's truck, which caused her to fall and strike her head. She apparently lost consciousness for a few seconds.
10. On the date of the accident, Autumn Marie Lively was eight years old, having a birth date of September 29, 1988. She was crossing the highway at the time of the accident, and was struck and pinned between the truck and her mother's car. She suffered extensive abrasions and bruising on her left thigh and her buttocks and cuts to her forehead.
11. On the date of the accident, Cassie Lively was six years old, having a birth date of January 14, 1991. She was struck by the truck and suffered cuts to her forehead and swelling and bruising around her right eye and abrasions to her right foot and leg.
12. On the date of the accident, Edward Lyda, Jr. was six years of age, having a birth date of August 24, 1990. He was crossing the highway towards his stepmother's vehicle when the accident occurred. He attempted to jump out of the way and landed in a ditch. He sustained a deep laceration to the back of his head and a fractured left clavicle.
13. Autumn Lively, Cassie Lively and Edward Lyda Jr. were all taken to Transylvania Community Hospital Emergency Room. Autumn and Cassie both had apparent head injuries. Due to concerns over the possible seriousness of their injuries, Autumn and Cassie were transferred to Memorial Mission Hospital in Asheville. All the children were released from the hospital the next day.
14. Following the accident, Kimberly Lyda was taken to Transylvania Community Hospital, where she was admitted and assessed with pain in her left lower quadrant, abdomen, left hip and pelvis and back pain radiating into her legs. She had multiple contusions and abrasions. While there were initial concerns about her spleen, further evaluation established that the spleen prominence was not secondary to the trauma.
15. Witnessing the accident was very upsetting to Kimberly, especially having her children so close and yet not being able to intervene to prevent their injuries. Her concerns were compounded while she was in the hospital, especially since two of her daughters had been transferred to Memorial Mission Hospital and she could not be with them.
16. Following the accident, Kimberly and her daughters received counseling from Margo Burr, MA for a few visits. Ms. Burr did not have the opportunity to do any in-depth counseling with Kimberly because Kimberly stopped coming for visits in the summer of 1997. Although she did not make a diagnosis that Kimberly suffered from post-traumatic stress disorder, Ms. Burr testified that she would tend to agree with such an assessment. At the same time, she testified that Kimberly showed signs of somatosizing, which is translating emotions into physical symptoms.
17. Kimberly Lyda had a very difficult and dysfunctional background. As a child she was subjected to physical and emotional abuse, including sexual abuse from her father. Her first marriage was to a man, Carroll Lively, who was abusive and had substance abuse problems. She herself had problems with alcohol abuse for some period of time.
18. In follow-up after her discharge from the hospital, Kimberly continued to complain of low back and pelvic pain. However, her physical examinations were normal with no objective findings to explain her pain complaints. An MRI and bone scan done in February 1997 were both normal.
19. Although Kimberly complained of gastrointestinal problems after the accident, her medical history establishes that these complaints existed long before the accident. She had a history of stomach problems and irritable bowel syndrome. She visited her doctor with complaints of stomach cramps and nausea in May 1996 and again in July 1996, and was hospitalized for lower GI bleeding in December 1996.
20. Kimberly Lyda also complained about TMJ and weight problems after the accident, but the evidence shows that these problems were also present long before the accident. Her medical records show that she had been diagnosed with TMJ as early as May 1993. The accident may have caused additional stress, which aggravated the TMJ, but it was not the cause. Plaintiff also had fluctuations in her weight, and had difficulty eating and was greatly underweight at times prior to the accident.
21. Kimberly Lyda had a significant history of emotional problems, including substance abuse and depression. Following the death of her ex-husband in August 1996, she was seen by Dr. James Shaw on September 9, 1996, with complaints of depression and difficulty concentrating and falling asleep. At that time, Dr. Shaw started her on Prozac and Xanax. In follow-up visits with Dr. Shaw, he continued to note her diagnosis of depression and anxiety, which was controlled with medication.
22. On May 2, 1997, she was admitted to the mental health ward of Pardee Hospital. The history taken showed that she complained of depression and weight loss, with the depression dating back to her childhood when she had abusive experiences. She also related a history of migraine headaches dating back to her teenage years. It was during this admission that she was diagnosed with post-traumatic stress disorder, as well as a depressed mood, migraine headaches, and irritable bowel syndrome.
23. Following her release from Pardee Hospital, Kimberly's condition improved as noted by her physician, Dr. Shaw, in May and June 1997, and she appeared to be stabilized. Her appearance was neat and she seemed to be brighter and more cheerful.
24. When she was seen for GI complaints by Dr. Shaw on July 30, 1997, Dr. Shaw noted that this was much like the pain she had the prior year. On October 27, 1997, she went to see Dr. Shaw complaining of being thrown while on a horse and landing on the saddle horn. She requested Vicodin, but Dr. Shaw would only prescribe a limited amount of Darvocet.
25. On October 31, 1997, over nine months after the January 22, 1997 accident, Kimberly Lyda shot herself in the abdomen with a .22 rifle. She was taken to Transylvania Community Hospital and then to Memorial Mission Hospital. She died on November 5, 1997 from complications from the wound.
26. Although Judith Sebrell and Edward D. Lyda, Sr. both testified that the accident resulted in Kimberly Lyda's suicide, their testimony does not support by the greater weight that the accident was a proximate cause of Kimberly Lyda's suicide or that Kimberly Lyda's suicide was a foreseeable consequence of the accident.
27. Although Dr. Puente gave an opinion on the question of whether the accident was a proximate cause of Kimberly Lyda's suicide, he never met with or examined Kimberly. To the extent that plaintiff relies on Dr. Puente's testimony to support this claim, the same is not persuasive.
28. Although the accident may have aggravated some of her pre-existing symptoms, the evidence fails to establish by the greater weight, that the accident of January 22, 1997 was a proximate cause of her suicide. Kimberly Lyda had a complicated history of physical and emotional difficulties which predated the accident.
29. The medical expenses, which can clearly be established as related to the injuries sustained by Kimberly Lyda as a result of the January 22, 1997 accident, are those related to her hospitalization immediately following the accident and subsequent follow-up with her treating physicians. These expenses total approximately $10,000.00.
30. Considering the nature and extent of her injuries sustained in the accident of January 22, 1997 and the additional stress related to her concerns about her children that were caused by the accident, the amount of $60,000.00 is the reasonable value of the damages sustained by Kimberly Lyda, including her medical expenses and recovery for her physical injury and pain and suffering.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. The negligence of defendant and the employee(s) of defendant caused the accident of January 22, 1997, which resulted in the personal injuries sustained by Kimberly Lyda, her three daughters, and her stepson. Therefore, Kimberly Lyda had a cause of action to recover from defendant monetary damages for the injuries she sustained pursuant to N.C. Gen. Stat. § 143-291 et seq.
2. An action for expenses incurred prior to death and for pain and suffering will survive the death of Kimberly Lyda pursuant to N.C. Gen. Stat. § 28A-18-1. Bowen v. Constructors Equipment Rental Co.,283 N.C. 395 (1973). Although this claim was filed as a wrongful death claim, the prior causes of action for medical expenses, and pain and suffering on Kimberly Lyda's behalf, may be pursued by the personal representative. By the greater weight of the evidence plaintiff is entitled to recovery for these injuries.
3. The evidence fails to establish by the greater weight, that the accident of January 22, 1997 was a foreseeable proximate cause of Kimberly Lyda's suicide. At best, the accident was only a remote possible cause rather than a foreseeable proximate cause. There were too many other factors involved in the suicide and the suicide did not occur until over nine months after the accident. Therefore, plaintiff is not entitled to damages based upon a wrongful death claim. McNabb v. Town ofBryson City, 82 N.C. App. 385, 346 S.E.2d 285 (1986); N.C. Gen. Stat. § 143-291 et seq.
4. The sum of $60,000.00 is reasonable and appropriate as an award of damages for the medical expenses, physical injury, psychological and emotional injury, and pain and suffering sustained by Kimberly Lyda in the accident of January 22, 1997. This award may be recovered by her estate.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. IT IS HEREBY ORDERED that defendant shall pay to the Estate of Kimberly Lyda the sum of $60,000.00.
This the ___ day of March 2002.
 S/_____________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________________________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER